254 P.3d 425

STATE of Hawai'i, Respondent/Plaintiff–Appellee

v.

Cornelius Wesley DURHAM, Petitioner/Defendant–Appellant.

No. SCWC–29923.

Supreme Court of Hawai'i.

May 27, 2011.

Reconsideration Granted in Part and Amended June 14, 2011.

Leslie K. Iczkovitz, (Taryn R. Tomasa, Deputy Public Defender on the briefs), for petitioner/defendant-appellant.

Peter A. Hanano, Deputy Prosecuting Attorney, County of Maui (Richard K. Minatoya, Deputy Prosecuting Attorney, County of Maui, on the brief), for respondent/plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ., and Circuit Judge BORDER, Assigned due to a Vacancy.

Opinion of the Court by ACOBA, J.

We hold that in a probation revocation proceeding, a defendant must be given notice of all factual information related to probation revocation that is contained in a probation officer's recommendation letter to the court in accordance with *State v. Paaaina,* 67 Haw. 408, 689 P.2d 754 (1984). The lack of such notice amounts to a violation of due process that requires remand and a new probation revocation hearing to afford the defendant an opportunity to address such information. Inasmuch as such factual information was not disclosed to Petitioner/Defendant–Appellant Cornelius Wesley Durham (Petitioner), the January 11, 2011 judgment of the Intermediate Court of Appeals (ICA) filed pursuant to its November 24, 2010 summary disposition order (SDO)[1] is vacated, and the case is remanded to the circuit court of the second circuit (the court)[2] for a new evidentiary hearing on the motion for revocation filed by Respondent/Plaintiff–Appellee State of Hawai'i (Respondent). *See State v. Durham,* No. 29923, 2010 WL 4814111 (App. Nov. 24, 2010) (SDO).

## I.

The following essential matters, some verbatim, are from the record and the submissions of the parties.

## A.

On April 20, 2007, Petitioner was indicted on two counts of sexual assault in the third

---

1. The SDO was filed by Associate Judges Lawrence M. Reifurth and Lisa M. Ginoza, with Chief Judge Nakamura dissenting.

2. The Honorable Rhonda I.L. Loo presided over the revocation hearing.

degree, Hawai'i Revised Statutes (HRS) § 707–732(1)(b) (Supp.2007).[3] On August 6, 2007, he entered no contest pleas to amended charges of sexual assault in the third degree, HRS § 707–732(1)(d) (Supp.2007).[4] The court sentenced Petitioner to five years' probation on each count, to run concurrently, with standard and special terms and conditions of probation. Special term and condition "J" required Petitioner to participate in sex offender treatment:

> [Petitioner] must participate satisfactorily in the Hawai'i Sex Offender Treatment Program (HSOTP) with the provision that [Petitioner] obtain and maintain sex offender treatment, as approved by [his] probation officer, at [his] own expense *until clinically discharged with the concurrence of [his] probation officer.*

(Emphasis added.) Judgment was entered on September 20, 2007.

### B.

In October 2007, Petitioner began to receive sex offender treatment from Catholic Charities (Charities). Petitioner was supervised by therapist Tamra Hayden–Billings (Billings). In May 2008, Billings presented Petitioner with a "Behavioral Lapse Contract" (contract) because, according to Bumanglag and Billings, respectively, Petitioner had had sexual contact with a co-worker and students, making it likely that he would relapse. The contract said that violation of its terms would result in "immediate termination from Sex Offender Treatment[.]"

Petitioner's probation officer in the First Circuit, Tiffany Bumanglag (Bumanglag), testified at the revocation hearing. Bumanglag supervised Petitioner, who was residing on Oahu but had committed the original crimes on Maui, under a "courtesy supervision" for the second circuit. In that regard, she would share information, when she had to, with Lara Nishikawa (Nishikawa), Petitioner's probation officer on Maui. Bumanglag did not speak with Nishikawa on a regular basis. According to Bumanglag, on May 28, 2008, approximately a week after Petitioner received the contract, Petitioner left a voicemail message with Bumanglag stating that he had signed the contract. However, Billings said Petitioner had not signed the contract. At some point, the contract was signed by Petitioner, who wrote "signed under duress" on it. Although the contract was not dated, a handwritten notation on the document states that it was "fax[ed] from Tamra Cath Char" on June 19, 2008. Additionally, Bumanglag stated that she received the signed contract on June 19, 2008.

On June 25, 2008, Petitioner's friend, attorney Leslie Iczkovitz (Iczkovitz), drafted a letter to Bumanglag and Billings, seeking clarification of "verbal and written restrictions" that had been imposed on Petitioner. The letter asked whether Petitioner had been threatened with "terminat[ion] [ ] from the [Sex Offender Treatment Program (SOTP) ] if [Petitioner] d[id] not comply with the terms of his [contract] that he signed under duress on June 4, 2008."

Iczkovitz requested that Billings and Bumanglag "respond to this letter, in writing, with [their] current positions regarding the conditions and restrictions discussed [in the letter]." According to the letter, Iczkovitz would "fil[e] a motion ... to amend [Petitioner's] terms of probation to prohibit ... [a] continuing ... violat[ion] of [Petitioner's] fundamental rights[ ]" if resolution of the issue could not be achieved.

On June 27, 2008, Petitioner was involuntarily terminated from Charities. The "Termination of Treatment" Report filed June 30, 2008, submitted by Billings, cited four reasons for termination, being that (1) Petitioner's "threat of legal action" interfered with the therapeutic relationship; (2) the threat of

---

**3.** HRS 707–732(1)(b) provides that "[a] person commits the offense of assault in the third degree if [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]"

**4.** HRS § 707–732(1)(d) provides that "[a] person commits the offense of assault in the third degree if [t]he person knowingly subjects to sexual contact another person who is mentally defective, mentally incapacitated, or physically helpless, or causes such a person to have sexual contact with the actor[.]"

litigation demonstrated resistance to treatment; (3) signing the contract "under duress" indicated resistance to treatment; and (4) failure to discuss the letter Iczkovitz sent Billings and Bumanglag during group therapy suggested that Petitioner wanted to keep secrets from the group.

Petitioner reported that "[s]ix days after" his termination, he began private treatment with Gregory Turnbull, a licensed psychologist who treats sex offenders. Petitioner declared that he applied, and was accepted, into another SOTP run by Gerald Reardon on July 18, 2008, with the approval of his probation officer.

## II.

### A.

On July 15, 2008, Respondent filed a motion for an order to show cause (OSC) as to "why the terms and conditions of probation imposed . . . on September 20, 2007, should not be revoked and [Petitioner] be resentenced by the [c]ourt[,]" and for issuance of an arrest warrant. The motion was based upon the recommendation of "[ ] Nishikawa, Senior Probation Officer, . . . and Chapter 706 of the [HRS]." Respondent attached an affidavit in which Nishikawa attested that Petitioner violated the terms and conditions of probation because he "ha[d] been terminated from the [HSOTP]."

### B.

### 1.

The hearing on the revocation motion was eventually scheduled for June 4, 2009.[5] A "Confidential Violation Report of Probation Officer in the Matter of the Motion For Revocation of Probation" (Report) was submitted by Nishikawa to the court and to the parties, at some point before the hearing.[6] The Report "apprise[d] the court and [Peti-

tioner] of the pertinent facts of the case as well as the facts and circumstances of the alleged violation."

The Report recounted that Petitioner was accepted for courtesy supervision and started sex offender treatment with Charities in October 2007. According to the Report, Petitioner initially had a "satisfactory" adjustment to the program, but in May 2008, he was "suspended" because he was "unable to be responsible and accountable for his actions." On May 21, 2008, he was presented with the contract, but Petitioner "held on to [it] for about a month" before signing it "under duress." After Iczkovitz's letter was received by Bumanglag and Billings, Petitioner was terminated from the program.

### 2.

Nishikawa had also written a letter dated September 10, 2008, addressed to Judge Shackley Raffetto, indicating that Petitioner was a high risk to commit another assault because a polygraph examination indicated he had assaulted four other victims, and recommending that Petitioner's probationary period be extended for an additional five years with the condition that Petitioner serve one year of imprisonment (recommendation letter).

According to progress reports received from [Charities], during the period of October thru March, [Petitioner's] attitude/behavior were considered to be either "Good Attitude/Behavior" or "Very Good Attitude/Behavior." This attitude/behavior deteriorated once [Petitioner] was suspended from treatment (May 2008), as evidenced by his deliberate procrastination to signing his [ ] contract, as well as the letter that was written on his behalf by his roommate, [Iczkovitz].

In May 2008, after being in [treatment] for nearly [eight] months, [Petitioner] put

---

5. The hearing was initially scheduled for September 17, 2008, but for various reasons, it was continued to June 4, 2009. On December 9, 2008, Petitioner's counsel, a deputy public defender, moved to withdraw as counsel. On April 14, 2009, the parties stipulated to continue the "evidentiary hearing [on the OSC]" to June 4, 2009.

6. The record does not reflect when the parties received the Report. However, they referred to it throughout the revocation hearing. Respondent stated that the contract was "under attachment A of the [Report.]" The court asked if it was a "two-page document[,]" to which Respondent replied that it was.

himself in a "high risk" situation[.] This incident caused [Petitioner] to be suspended from treatment as well as be placed on a [ ] contract with [Charities]. The [ ] contract appears to have instigated a letter written by [Petitioner's] friend/roommate [Iczkovitz].

. . . .

*A few things that were learned from [Petitioner's] polygraph are of an immense concern. First of all, [Petitioner] has had four (4) other sexual assault victims, which does not include the victim in his current case.* Secondly, [Petitioner] ... has previously slept with students and clients. As mentioned in the termination letter from [Charities], [Petitioner] does seem to understand how his past behaviors need to be changed before engaging in further relationships with women. *Without this understanding, it is felt that [Petitioner] is at a high risk to once again commit another assault.* Perhaps jail time would give [Petitioner] an opportunity to internalize his actions and to understand that he is not a victim . . . .

[Petitioner] did not receive any jail time at the time of sentencing, however, a lengthy jail time would seem appropriate at this time.

*It is, therefore, respectfully recommended that ... [Petitioner's] probation be revoked and that he be resentenced to another Five (5) year term of probation with the following special conditions :*

1. *Serve a term of imprisonment of one (1) year,* mittimus to issue forthwith,

credit for time served on this OSC only[.]"

(Formatting altered.)  (Emphases added.)

### C.

On June 4, 2009, Judge Loo held the hearing on Respondent's motion for an OSC, apparently pursuant to HRS § 706–625 (Supp.2007).[7] At the hearing, Bumanglag, Reardon, and Iczkovitz testified. Additionally, letters from Petitioner's treatment providers, co-workers, and his girlfriend, were submitted as exhibits. Respondent did not feel the need to call "Nishikawa since her report's in there[,]" and because "she did not directly supervise [Petitioner.]"

In argument, Petitioner's deputy public defender contended that Petitioner was terminated from the program because of Iczkovitz's letter. On the other hand, Respondent urged the court to focus on the "four important reasons" for termination listed by Billings. Respondent "strongly urge[d] th[e c]ourt to follow the recommendation of the probation officer, ... [t]o revoke probation." Respondent stated that it deferred "to the [jail] time that is requested by the probation officer in this case."

Judge Loo concluded that there were "several reasons" for Petitioner's termination, including the fact that he "interfered" with his therapeutic relationship, showed a lack of desire to participate in treatment, did not complete the program, was deceptive when signing the contract, and kept secrets from his therapy group. The court revoked probation, concluding that Petitioner "inexcusably failed to participate satisfactorily in the [HSOTP] and was terminated[.]"

▮ The court sentenced Petitioner to "another five-year term of probation"[8] with

---

7. HRS § 706–625, entitled "Revocation, modification of probation conditions," provides in relevant part:

(1) The court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, *may revoke probation ..., reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706–627.*

. . . .

(3) *The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condi-*

*tion of the order or has been convicted of a felony.* The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

(Emphases added.)

8. A court can properly revoke probation and resentence a defendant to another term of probation. Upon determining that a defendant "inexcusably failed to comply with a substantial requirement of probation or has been convicted of a felony[,]" "[t]he court may (1) modify the terms of probation;  (2) revoke probation and sentence him to imprisonment;  or (3) revoke probation

the special condition that he serve one year imprisonment "with mittimus to issue forthwith with credit for time served on this OSC only." The mittimus indicated that Judge Loo was the "judge issuing sentence." The Order Revoking Probation and Resentencing Petitioner was filed on June 26, 2009. It appears to have been signed by Judge Raffetto.

### D.

On July 2, 2009, Petitioner filed a notice of appeal.

On September 9, 2009, Petitioner filed a motion seeking reconsideration of the sentence. Petitioner, among other arguments, contended that a year in jail was too harsh for "a probationer who made no wilful and deliberate attempt on his part to circumvent the order of the court[.]" Respondent opposed the motion for reconsideration, arguing that the court appropriately revoked probation and resentenced Petitioner. On September 24, 2009, the court denied the motion.

### III.

### A.

Petitioner filed his Opening Brief on February 18, 2010, arguing, *inter alia,* that the court abused its discretion in revoking Petitioner's probation because the court's findings of fact were not supported by the evidence and did not indicate a wilful and inexcusable failure to comply with probation. In Petitioner's view, his probation was revoked, "not because of what he had done, but because Billings overreacted to Iczkovitz's letter." On May 4, 2010, Respondent filed an Answering Brief, countering, *inter alia,* that the court looked to "other factors," in addition to Iczkovitz's letter, when determining the reasons for termination. Thus, according to Respondent, the evidence supported the court's decision. In Reply, Petitioner argued, *inter alia,* that the evidence clearly established

that Iczkovitz's letter caused Petitioner's termination.

### B.

On October 29, 2010, the ICA issued an order seeking supplementation of the record with the Report and attachments, stating,

At the June 4, 2009[ ] evidentiary hearing on [Respondent's OSC], the circuit court appears to have relied on documents that were not made a part of the record on appeal: *a probation violation report and attachments, including a letter from [Billings] entitled "Termination of Treatment, Child Sexual Abuse Treatment Program[.]"*

These documents were not made part of the record on appeal.... IT IS HEREBY ORDERED that:

1. To the extent the documents were admitted or considered at the evidentiary hearing on June 4, 2009, [Petitioner] shall take all necessary action to request that the probation violation report and attachments[ ] ... be made part of the Record on Appeal....

2. ... If the requested documents contain confidential information or were filed under seal, *they should be submitted to the appellate court under seal.*

(Emphases added.)

The record was supplemented with additional documents, filed under seal, on November 18, 2010.

On November 24, 2010, a majority of the three-judge ICA panel affirmed the court. The ICA majority concluded that the "court's finding that [Petitioner] 'failed to comply with a substantial requirement imposed as a condition of [probation]' ... was not clearly erroneous, as there is substantial evidence in the record to support this finding." 2010 WL 4814111, at *1. The majority decided that Petitioner's "premature termination" from Charities, "prior to being clinically discharged and without the concurrence of his

and resentence him to another term of probation." *State v. Viloria,* 70 Haw. 58, 61, 759 P.2d 1376, 1378 (1988); *see also* HRS § 706-625(5) ("When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted.").

probation officer, constituted a failure to comply with a substantial requirement of his probation." *Id.* The four reasons for Petitioner's termination, adduced from the revocation hearing, according to the majority, provided evidence that Petitioner's failure to comply with his terms of probation was inexcusable.

Chief Judge Nakamura dissented. In his view, the evidence "reflect[ed] that [Charities] terminated [Petitioner] basically because an attorney friend wrote a letter complaining about certain restrictions imposed on [Petitioner] as part of his treatment." *Id.* at *3 (Nakamura, C.J., dissenting). Thus, Respondent "did not demonstrate that [Petitioner's] termination from the [Charities'] program was justified." *Id.*

### C.

#### 1.

On November 24, 2010, Iczkovitz discovered the recommendation letter upon review of the supplemental documents filed on November 18, 2010.

On December 5, 2010, Iczkovitz became Petitioner's counsel pursuant to a notice of withdrawal and substitution of counsel.

On December 6, 2010, Petitioner filed a motion for reconsideration with the ICA on the grounds that Petitioner had recently discovered the recommendation letter, the letter recited false information about Petitioner that the court had received, and likely relied on, when issuing its order, and the ICA misapplied the law. The motion alleged that the September 10, 2008 recommendation letter from Nishikawa to Judge Raffetto included "false, inflammatory and highly prejudicial statements that, if believed, established [Petitioner] as a high risk predator." [9]

The declaration of Petitioner's deputy public defender, and the recommendation letter itself, were filed in connection with the motion for reconsideration. The deputy public defender declared that she had never seen "a copy of a letter dated September 10, 2008

from [ ] Nishikawa, [Petitioner's] Probation Officer at the time, addressed to Judge Shackley Raffetto," and that, upon review of her case file, she did not see a recommendation letter.

In the reconsideration motion, Petitioner quoted the following as the "false information" contained in the recommendation letter:

A few things that we learned from polygraph are of immense concern. [Petitioner] has had [four] other sexual assault victims which does not include the victim in his current case.

Petitioner also quoted the language that alleged he "is at high risk to once again commit another assault." According to Petitioner, the recommendation letter was "available for review by Judge [ ] Loo prior to her verbally issuing her [o]rder [r]evoking [p]robation and [r]esentencing [Petitioner.]" Petitioner indicated that the content of the letter "makes apparent the likely basis for the [court] revoking [Petitioner's] probation, ordering him to prison for one year and extending his probation for an additional five years."

Petitioner conceded that a sentencing recommendation is confidential and need not be disclosed to a defendant. However, he contended it was improper to submit new factual information to a court and for a court to receive or review that information, without disclosing it to a defendant. (Citing *Paaaina*, 67 Haw. 408, 689 P.2d 754.) Petitioner also maintained that "it is customary and proper for a sentencing recommendation to be reviewed by a court only after the defendant has been found guilty of a probation violation." Otherwise, "the court's judgment will likely be negatively affected by a probation officer's opinions of a person's risk status and descriptions of a person's past offenses."

#### 2.

On December 30, 2010, the ICA majority denied the motion for reconsideration as follows:

---

9. Petitioner quoted verbatim parts of the September 10, 2008 confidential recommendation letter from Nishikawa to Judge Raffetto in his public

filings of December 6, 2010, and February 2, 2011, with the court.

In the instant appeal, the points of error raised by [Petitioner] focused on: (a) the facts and circumstances of [Petitioner] being terminated from a [SOTP] and whether that constituted an inexcusable failure on his part to comply with a substantial condition of his probation; and (b) whether he had ineffective assistance of counsel. With regard to these points of error, the circuit court did not abuse its discretion in revoking [Petitioner's] probation. The stated basis for the circuit court's revocation order was that [Petitioner] failed to comply with Special Condition J of his probation because he was terminated from the sex offender treatment program without being clinically discharged. In addressing [Petitioner] during the revocation hearing, the circuit court stated: "You were deceptive; you weren't open to treatment; you didn't follow through with treatment; you were supposed to complete—you're supposed to complete satisfactorily the [HSOTP] with the ... concurrence of your probation officer, and you didn't do that." Nowhere in the record does the circuit court mention or allude to other factors in revoking [Petitioner's] probation.[10]

*State v. Durham*, No. 29923, 2010 WL 5497543, at *1 (App. Dec. 30, 2010) (Order Denying Motion for Reconsideration) (ellipsis in original) (brackets omitted). The ICA majority maintained that "[a]lthough [Petitioner's] current allegations of false information in the [recommendation l]etter raise a *potentially significant issue, the record is not* sufficiently developed in that regard." *Id.* (footnote omitted).

The ICA confirmed that a defendant should " 'have access to all factual information used in sentencing.' " *Id.* at *1 n. 2

(quoting *Paaaina*, 67 Haw. at 411, 689 P.2d at 757). However, according to the ICA, Petitioner's "allegations regarding the false information and also whether the information had any role in the [ ] court's revocation decision will need to be addressed by way of a petition pursuant to Rule 40 of the Hawai'i Rules of Penal Procedure (HRPP)."[11] *Id.* at *1. On February 7, 2011, Petitioner filed an Application for Writ of Certiorari, seeking review of the January 11, 2011 judgment of the ICA.

IV.

Petitioner lists the following questions in his Application:

A. Did the [court] abuse its discretion in revoking [Petitioner's] probation where the court's findings were unsupported by the evidence presented and nothing in the record indicated that [Petitioner] had wilfully, inexcusably failed to comply with a substantial condition of his probation?

B. Did the [court] abuse its discretion in revoking [Petitioner's] probation while he was fully compliant with all conditions of his probation?

C. Does the newly discovered ex-parte letter to the [court] from [Petitioner's] probation officer containing extremely prejudicial false facts never disclosed to [Petitioner] require reversal of the order revoking [Petitioner's] probation based on [*Paaaina*]?

Respondent did not file a Response. We accepted certiorari primarily to resolve the third question.

---

**10.** Although Judge Nakamura agreed "with the majority's conclusion that [Petitioner's] arguments regarding newly-discovered evidence do not warrant granting his motion for reconsideration," he would have granted the motion "to the extent it challenges the substantive basis for the [SDO]." 2010 WL 5497543, at *1 (Nakamura, C.J., concurring and dissenting).

**11.** HRPP Rule 40 provides a post-conviction means for defendants to seek relief from a judgment of conviction or from custody. A defendant may challenge the judgment of conviction on the grounds that "the judgment was obtained or

sentence imposed in violation of the Constitution of the United States or of the State of Hawai'i[,]" "the court which rendered the judgment was without jurisdiction[,]" "the sentence is illegal[,]" "there is newly discovered evidence[,]" or on "any ground which is a basis for collateral attack[.]" HRPP Rule 40(a)(1)(i)-(v). A defendant can challenge his custody on the grounds that the "sentence was fully served[,]" the "parole or probation was unlawfully revoked[,]" or "any other ground making the custody, though not the judgment, illegal." HRPP Rule 40(a)(2)(i)-(iii).

## V.

The recommendation letter was submitted to the court for its consideration and the court did make reference to the probation officer's recommendation, as did Respondent, during the hearing. It is reasonable to assume that in the ordinary course, the court would review the probation officer's recommendation. The letter contained alleged facts "learned from the [Petitioner's] polygraph" regarding "four (4) other sexual assault victims." Inasmuch as those facts were not disclosed on the record, the basis for the court's decision cannot be reviewed in their absence. Thus, an evaluation of whether the court erred or abused its discretion as presented in questions A and B of the Application, cannot be performed appropriately. Correlatively, Petitioner was entitled to an opportunity to respond to the alleged other assaults. Accordingly, the crux of the Application is a resolution of question C.

## VI.

In connection with question C, Petitioner argues that (1) the recommendation letter contained false information undisclosed to Petitioner, (2) Petitioner was deprived of his right to refute the "new factual information" in violation of *Paaaina*, (3) it was "highly probable" that a court would rely on such information from a probation officer, and the recommendation letter explains why the court was so "unforgiving" to Petitioner, and (4) this court should consider a new rule requiring a court to review a probation officer's recommendations only after determining that a defendant violated probation.

12. As to any statutory right, the court noted that the statutes at issue, §§ 706–601 to –604 (1976), did not "mention that the probation officer's recommendation must be made available to defendants." 67 Haw. at 409, 689 P.2d at 756. Those statutes currently do not provide that the probation officer's recommendation must be made available to the parties.

13. HRS § 706–602 (1993) currently provides, in relevant part:
   (1) The pre-sentence diagnosis and report shall be made by personnel assigned to the court, intake service center or other agency designated by the court and shall include:
      (a) An analysis of the circumstances attending the commission of the crime;

## VII.

We initially address Petitioner's first two arguments.

### A.

■ The alleged facts concerning four other victims was not disclosed before or at the revocation hearing. Petitioner had the right, as set forth in *Paaaina*, to be notified of allegations regarding other victims so that he could have challenged their accuracy. In *Paaaina*, this court noted that, "[i]f the judge finds new factual information in the recommendation letter, it is incumbent upon the judge to make it available to the defendant." 67 Haw. at 410, 689 P.2d at 757. In that case, the court received a pre-sentence diagnosis and report (pre-sentence report) and a confidential letter from the probation officer containing the officer's sentencing recommendation before the sentencing hearing. *Id.* at 408–09, 689 P.2d at 755. The presentence report, but not the letter, was made available to the defendant. *Id.* The defendant requested that the probation officer's recommendation be revealed to the parties, but the circuit court denied the request and sentenced the defendant. Although this court held that the defendant had no constitutional or statutory[12] right to examine the confidential recommendation letter, it was concluded that the defendant had a right to all factual information used in sentencing, even if that included facts contained in the recommendation letter:

> HRS §§ 706–602 [13] and 706–604 [14] clearly contemplate that a defendant will have

> (b) The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;
> (c) Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered;
> (d) Information concerning defendant's compliance or non-compliance with any order issued under section 806–11; and

*access to all factual information used in sentencing. Therefore, it is incumbent upon the probation officer to carefully draft the recommendation letter and it should be based only on facts contained in the pre-sentence report. If the judge finds new factual information in the recommendation letter, it is incumbent upon the judge to make it available to the defendant.*

*Id.* at 410, 689 P.2d at 757 (first emphasis in original, other emphases added). However, because the "recommendation was made based only on facts contained in the presentence report[,]" this court concluded that no disclosure was required. *Id.*

Analogously, in the instant case, it was "incumbent" on Nishikawa to draft her recommendation "based only on facts," *id.*, contained in her probation violation report. However, that four additional individuals were allegedly assaulted by Petitioner are factual allegations not contained in the Report. Thus, it became "incumbent upon the judge," *id.*, to disclose the alleged facts of other assaults to Petitioner. The court, however, did not disclose that fact.

### B.

The disclosure of facts to the parties is based on the proposition that the court must have correct information to render a just sentence. "In any system which vests discretion in the sentencing authority, it is necessary that the authority have sufficient and accurate information so that it may rationally exercise its discretion." *State v.*

*Lau,* 73 Haw. 259, 262, 831 P.2d 523, 525 (1992) (internal quotation marks and citation omitted). Hence, at sentencing, a defendant is afforded the opportunity to controvert or supplement facts that the probation officer relied upon to correct errors:

> [T]he legislature was not unmindful of the dangers posed to the defendant in terms of those portions of the report which might be misleading, incomplete, or inaccurate. Thus, [in HRS § 706–604,] the legislature afforded the defendant an opportunity to respond to the presentence report, and more importantly, an opportunity to rebut those sections in question.

*State v. Lessary,* 83 Hawai'i 280, 284–85, 925 P.2d 1104, 1108–09 (App.1996) (quoting *State v. Nobriga,* 56 Haw. 75, 80, 527 P.2d 1269, 1273 (1974) (indicating that precluding a defendant from ascertaining the probation officer's reasons for omitting certain factors in a presentence report weighing against imprisonment would hinder the defendant's ability to adequately present a basis for amending the report)). Analogously, here, Petitioner should have been afforded the opportunity to controvert the assault allegations because they were not contained in the Report.

### C.

A defendant is also entitled to notice of the grounds upon which probation is sought to be revoked:

> The prosecuting attorney, the defendant's probation officer, and the defendant *shall be notified by the movant in writing of the time, place, and date of any such hearing,*

---

(e) Any other matters that the reporting person or agency deems relevant or the court directs to be included.

**14.** HRS § 706–604 (1993 & Supp.2010) currently provides, in pertinent part:

(1) Before imposing sentence, *the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition.*

(2) The court shall furnish to the defendant or the defendant's counsel *and to the prosecuting attorney a copy of the report of any presentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them.* The court shall amend or order the

amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made.
(Emphases added.) The 1976 version cited in *Paaaina* was substantially the same, stating that, "[t]he court shall furnish to the defendant or his counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychiatric or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them." *Paaaina,* 67 Haw. at 409, 689 P.2d at 756 (quoting HRS § 706–604(2) (1976)).

*and of the grounds upon which action under this section is proposed.* The prosecuting attorney, the defendant's probation officer, and the defendant may appear in [sic] the hearing to oppose or support the application, and may submit evidence for the court's consideration. The defendant shall have the right to be represented by counsel. For purposes of this section the court shall not be bound by the Hawaii rules of evidence, except for the rules pertaining to privileges.

HRS § 706–625(2) (emphasis added). In *State v. Wong*, 73 Haw. 81, 82, 829 P.2d 1325, 1326–27 (1992), the State had filed a motion for revocation of probation, "alleging as the sole basis, that [the defendant] had failed to maintain treatment at [the Hawai'i Addiction Center] until clinically discharged[.]" However, at the hearing, the circuit court heard testimony that the defendant "was dangerous because he was very likely to repeat his sexual offense and that the only appropriate treatment was through the Department of Corrections and required a year of incarceration[.]" *Id.* at 83, 829 P.2d at 1326. The circuit court, "based on [the defendant's] dangerousness to the community," revoked the defendant's probation and resentenced him to concurrent terms of incarceration. *Id.* at 82, 829 P.2d at 1326.

This court, in vacating the order revoking probation and remanding the case for a re-hearing, stated that the defendant was required to "be informed of the grounds for revocation in addition to the mere fact of his discharge from the drug treatment program that supported the State's motion for revocation." *Id.* at 87, 829 P.2d at 1329. Because he was not notified that his danger to society was a ground for revoking probation, the defendant was not informed properly of the grounds for revocation.

Similar to the defendant in *Wong*, in the instant case, Petitioner was notified that revocation was sought solely because he was terminated from his treatment program. However, based on the recommendation let-

ter, revocation was also apparently initiated on the basis that Petitioner was dangerous. Nishikawa was "immense[ly] concern[ed]" about Petitioner's behavior regarding additional victims, and advised the court that "[Petitioner] is at a high risk to once again commit another assault[,]" and emphasized that "jail time would give [Petitioner] an opportunity to internalize his actions[.]" Thus, revocation was suggested because Petitioner, like Wong, allegedly "was very likely to repeat his sexual offense[.]" *Wong*, 73 Haw. at 83, 829 P.2d at 1326. Similar to the defendant in *Wong*, Petitioner was entitled to notice prior to the hearing of the grounds, i.e., the other alleged assaults, upon which the probation officer recommended revocation.[15] *See Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (requiring that a probationer be given written notice of the claimed violations of probation).

While evidence supporting the charge that Wong was dangerous was introduced at the hearing, in the instant case alleged evidence that Petitioner had victimized others or was likely to commit another sexual assault was not elicited at the revocation hearing. Petitioner was never informed of such a ground for revocation. Thus, he had no opportunity to object, rebut, or otherwise dispute the factual allegations.

## D.

■ Due process mandates that factual information upon which revocation is sought be provided to the defendant, inasmuch as "[t]he question of whether the defendant should be sentenced to imprisonment or to probation is no less significant than the question of guilt[.]" Commentary on HRS § 706–604(2). "[M]otions to revoke are weighty matters deserving proportional solemnity in their resolution." *State v. Shannon*, 118 Hawai'i 15, 32, 185 P.3d 200, 217 (2008). A "defendant, 'threatened with loss or change of ... probation status[, must be given] the same procedural protection afford-

---

15. Petitioner also argues that Nishikawa's statement that Petitioner was at a "high risk" to society lacked any basis in the record. It appears that Nishikawa's statement that Petitioner

is a high risk would be a "ground[] " for revocation," *Wong*, 73 Haw. at 87, 829 P.2d at 1326, for which Petitioner should have received notification.

ed ... at the time of original disposition[, i.e., sentencing]." *Id.* (quoting Commentary on HRS § 706–627). Thus, "[a]s a matter of due process a motion to revoke probation ... is like a presentence report in that the defendant must be notified beforehand in order to allow him to contest it, if he wishes." *Id.* at 31, 185 P.3d at 216. Indeed, "the minimum requirements of due process[,]" *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593, initially provided to parolees but extended to probationers in *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), require in relevant part that a probationer be given "written notice of the claimed violations" of probation, "disclosure ... of evidence against him[,]" and "a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation[,]" *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593. Here, Petitioner's due process rights were violated to the extent that he lacked "written notice" that revocation was sought because he was a high risk to commit another offense, and he was not notified of the "evidence" of other sexual assaults that was used "against" him in seeking revocation.

## VIII.

■■■ We address Petitioner's remaining arguments.

The court appears to have had the recommendation letter in its possession before and during the revocation hearing.[16] Respondent referenced the "recommendation of the probation officer" and "jail time." The court, after revoking probation, acknowledged Respondent's "suggestion to follow along with the probation officer's recommendation." Indeed, the court followed every recommendation made by the probation officer in the recommendation letter[17] and incorporated every recommendation into the order revoking probation and resentencing Petitioner.

16. Although the recommendation letter and Report were addressed to Judge Raffetto, it appears from the transcript that Judge Loo had the Report and recommendation letter.

17. The Report did not indicate or recommend any sentence.

18. As noted before, Petitioner urges this court to consider issuing a new rule requiring that a

Similar to the presumption that a court has read a pre-sentence report before a sentencing hearing, a court may be presumed to have read a recommendation letter. A court is required to "accord due consideration to a written [pre-sentence] report of the diagnosis before imposing [a] sentence[.]" HRS § 706–601(1). *See State v. Hussein,* 122 Hawai'i 495, 532, 229 P.3d 313, 350 (2010) (noting that a court is presumed to have read a pre-sentence report); *see also State v. Heggland,* 118 Hawai'i 425, 443, 193 P.3d 341, 359 (2008) (noting that the report is meant to aid the court in the exercise of its discretionary sentencing authority); *Lau,* 73 Haw. at 263, 831 P.2d at 525 (presuming that the sentencing court complied with the statutory requirement of according due consideration to the pre-sentence report when it had the document at the hearing).

The probation officer was dutibound to "keep informed concerning the conduct and condition of the defendant and report thereon to the court, and ... use all suitable methods to aid the defendant and bring about an improvement in the defendant's conduct and condition." HRS § 806–73(a) (Supp.2007). It is reasonable to conclude, then, that a court would give due consideration to the probation officer's recommendation letter. Inasmuch as the court should have disclosed the alleged factual matters to the parties and Petitioner was not given any opportunity to address those matters, a new revocation hearing is necessary.[18]

## IX.

### A.

■■■ As confirmed by counsel at oral argument on April 21, 2011, Petitioner has served the special probation condition of a one-year term of imprisonment. Because

court review a sentencing recommendation only after determining that a defendant violated a term and condition of probation. Inasmuch as Petitioner was unable to rebut the evidence against him that was proffered in the recommendation letter, the proper remedy is to give Petitioner the opportunity to challenge the information at a new hearing, without the necessity of adopting a new rule.

Petitioner has served his one-year term, it may be considered whether the court's error, in failing to disclose facts contained in the recommendation letter, is moot. This court has explained that "[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights." *State v. Rogan*, 91 Hawai'i 405, 424 n. 13, 984 P.2d 1231, 1250 n. 13 (1999). Hence, "the mootness doctrine is properly invoked where events have so affected relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised." *Id.*

In the instant case, the court restarted Petitioner's five-year probation period commencing as of June 4, 2009, and, therefore, Petitioner is on probation until June 4, 2014. As to whether the parties continue to have an adverse interest, the parties are in adversarial positions inasmuch as Petitioner remains on probation as a result of the allegedly improper revocation of his probation. As to whether there is still an effective remedy for Petitioner's claim, setting aside the revocation order and resentencing Petitioner and remanding to the court for another revocation hearing may result in Petitioner's original terms of probation being reinstated. Inasmuch as he was originally sentenced in 2007 to two concurrent five-year terms of probation, as Petitioner's counsel confirmed at oral argument, Petitioner's original probation would end at some point in 2012. Based on the foregoing, Petitioner's claim is not barred by the mootness doctrine.

## B.

As previously indicated, the ICA determined that, in light of *Paaaina*, Petitioner's "allegations ... raise a potentially significant issue" that "[would] need to be addressed by way of a petition pursuant to Rule 40 of the [HRPP.]" *Durham*, 2010 WL 5497543, at *1. However, the record on appeal is "sufficiently developed" to allow for a new evidentiary hearing on the probation revocation motion on remand. *Cf. State v. Silva*, 75 Haw. 419, 439, 864 P.2d 583, 592 (1993) (noting that ineffective assistance of counsel claims can be entertained for the

first time on appeal where the "record is sufficiently developed to determine whether there has been ineffective assistance of counsel[ ]"). Here, the Report, recommendation letter, transcript of the probation revocation hearing, and all evidence from that hearing are in the record on appeal. Petitioner's deputy public defender submitted a declaration that she had never seen the recommendation letter. Inasmuch as there are no matters to be developed to ascertain whether the alleged factual matters in the recommendation letter were disclosed to Petitioner, the record was "sufficiently developed." *Id.*

## X.

Petitioner seeks reversal of the court's order revoking probation. However, as stated *supra*, whether the court erred when issuing that order cannot be evaluated appropriately without knowledge of the bases for the court's decision. The bases for the court's decision cannot be ascertained because the court, before making its decision, had factual information weighing in favor of revocation, but failed to disclose it and afford the parties the opportunity to respond to such information. Inasmuch as this court cannot appropriately decide whether the court erred in revoking probation without knowledge of the bases for the court's decision, reversal, without more, is not warranted.

Instead, we vacate the revocation order and remand for a rehearing on whether Petitioner inexcusably failed to comply with a substantial condition of probation. At the hearing, the parties will have the opportunity to address the matters previously raised and the factual information contained in the recommendation letter. The court, after considering all the evidence, can then decide whether Petitioner failed to comply with a term of probation, whether that condition was substantial, and whether Petitioner's failure to comply was inexcusable. *See State v. Huggett*, 55 Haw. 632, 639, 525 P.2d 1119, 1124 (1974) (vacating the order requiring imprisonment as a special condition of probation and affording the defendant a "rehearing to enable the court to determine whether,

considering the totality of the circumstances, his post-sentencing conduct was wilfully and deliberately subversive of exemplary probationary behavior").

Based on the evidence, the court may reinstate the original September 20, 2007 sentence of probation or reinstate the June 26, 2009 order revoking probation and resentencing Petitioner. On remand, the new evidentiary hearing shall be held before a different judge.[19]

## XI.

Based on the foregoing, the ICA's judgment of January 11, 2011 is vacated, and the case is remanded for proceedings consistent with this opinion.

---

19. Remanding the matter to Judge Loo or Judge Raffetto would be an inadequate remedy, as they had previously determined, after having possession of the recommendation letter, that Petitioner's probation should be revoked. *See Schutter v. Soong*, 76 Hawai'i 187, 208, n. 6, 873 P.2d 66, 87 n. 6 (1994) (remanding the re-sentencing to a new judge because the judge who originally sentenced the defendant had already determined the sentence); *see also State v. Chow*, 77 Hawai'i 241, 251 n. 13, 883 P.2d 663, 673 n. 13 (App. 1994) (remanding case to a different judge, not because the appellate court "question[ed] the impartiality of the district court judge who originally sentenced [the d]efendant," but because "the district court judge who originally sentenced [the d]efendant ha[d] already made a sentencing determination") (citation omitted).